UNITED STATES DISTRICT COURT
DISTRICT OF Connecticut

Jason Goode,
Plaintiff

Civil no. 3:17cv1188(AVC)

v.

July 10, 2017

Angel Champion
Brian Stadalinks
Richard Waldron
Brian Palmer
Amie Griffin
Lt. Scarchilli
Lt. Norfleet
Herman Colvin
Mike McDonald
B. Simmons
Beth Shaw
Scott Epps,
Defendants

FILED 2017 JUL 17 P 1:52 US DISTRICT COURT BRIDGEPORT CT

## Introduction of Complaint

1. This is a civil rights action filed by the plaintiff, Jason Goode, a state prisoner for monetary damages, declaratory and injunctive relief pursuant to 42 U.S.C. §1983, asserting excessive use of force and/or deliberate indifference by way of mechanical

restraint (chains) against the plaintiff by defendants, failure to act and failure to medically treat sustained injuries on plaintiff by contract Department of Correction personnel of whom all violated the plaintiff's Eigth Amendment Rights under the United States Constitution to be free from cruel and unusual punishment corresponding with state law claims.

## Jurisdiction

2. The Court has jurisdiction of the plaintiff's claim of violation of Federal Constitutional rights under 28 U.S.C. §1331(a) and 1343(a)(3) and under 42 U.S.C. §1983. Plaintiff also asserts violation of the twentieth Sections of Article first of the Connecticut Constitution.

## Parties

3. The plaintiff, Jason Goode, was and is at all times relevant herein a sentenced prisoner in the care and custody of the Connecticut Department of Correction and who is currently confined at the Northern Correction Institution but of which violations occurred at the institution of

Corrigan in Uncasville Connecticut.

4. Defendant Angel Champion (Champion) was a Correctional lieutenant at the Corrigan Correction Center. As such, she was responsible for the supervision of lower custody officers who have interactive contact with sentenced inmates at the correctional institution of which she was employed and assigned. At all relevant times, she was acting within the scope of her employment and under the color of state law. She is being sued in her official and individual capacities.

5. Defendant Brian Stadalink (Stadalink) was a correctional lieutenant at the Corrigan Correction Center. As such, she was responsible for the supervision of lower custody officers who have interactive contact with sentenced inmates at the correctional institution of which he was employed and assigned. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

6. Defendant Richard Waldron (Waldron) was a Correctional lieutenant at the Corrigan Correction Center. As such, he was responsible for the supervision of lower custody officers who have interactive contact

3

with sentenced inmates at the correctional institution of which he was employed and assigned. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

7. Defendant Brian Palmer (Palmer) was a correctional lieutenant at the Corrigan Correction Center. As such, he was responsible for the supervision of lower custody officers who have interactive contact with sentenced inmates at the correctional institution of which he was employed and assigned. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

8. Defendant Amie Griffin (Griffin) was a correctional Captain at the Corrigan Correction Center. As such, she was responsible for the overall management of any given assigned area within a correctional institution and of the general supervision of correctional lieutenants with respects to their official assignments and duties within a correction institution. At all relevant times, she was acting within the scope of her employment and under the color of state law. She is being sued in her official and individual capacities.

4

9. Defendant Scarchilli (Scarchilli) was a correctional lieutenant at the Corrigan Correction Center. As such, he was responsible for the supervision of lower custody officers who have interactive contact with sentenced inmates at the correctional institution of which he was employed and assigned. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

10. Defendant NooFleet (NooFleet) was a correctional lieutenant at the Corrigan Correction Center. As such, he was responsible for the supervision of lower custody officers who have interactive contact with sentenced inmates at the correctional institution of which he was employed and assigned. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

11. Defendant Herman Colvin (Colvin) was a correctional lieutenant at the Corrigan Correction Center. As such, he was responsible for the supervision of lower custody officers who have interactive contact with sentenced inmates at the correctional institution of which he was employed and assigned. At all relevant

times, he was acting within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

12. Defendant Scott Erfe (Scottina Erfe) was a Correctional Warden at the Corrigan Correctional Center. As such, he was responsible for the creation and enforcement of policies at the institution, training and supervision of persons working at the institution and of the custody and care for all those persons within the institution. At all relevant times, he was working within the scope of his employment and under the color of state law. He is being sued in his individual and official capacities.

13. Defendant Mike McDonald (MacDonald) was a Correctional registered nurse at the Corrigan Correctional Center. As such, he was responsible for administering non essential miscellaneous medical care to prisoners, inmates and detainees at the Correctional Center. At all relevant times, he was working within the scope of his employment and under the color of state law. He is being sued in his official and individual capacities.

6.

14. Defendant B. Simmons (Simmons) was a Correctional registered nurse working at the Corrigan Correction Center. As such, she was responsible for administering nonessential miscellaneous medical care to prisoners, inmates and detainees at the correctional center. At all relevant times, she was working within the scope of her employment and under the color of state law. She is being sued in her official and individual capacities.

15. Defendant Beth Shaw (Shaw) was a Correctional registered nurse at the Corrigan Correction Center. As such, she was responsible for administering nonessential miscellaneous medical care to prisoners, inmates and detainees at the correctional center. At all relevant times, she was working within the scope of her employment and under the color of state law. She is being sued in her official and individual capacities.

## STATEMENT OF FACTS

16. Stemming from an earlier incident that happened in another housing unit of the institution, on July 30, 2014 Defendant Champion ordered that the plaintiff be upgraded into full stationary

7.

restraints (i.e. secured to a bare bed with leather straps fastened to the wrists and ankles) after plaintiff refused to comply with a strip search.

17. At 11:05pm defendant Champion reported to the segregation unit to supervise a process what is termed "Range of Motion" (which consist of the brief exercise of each arm out of leather restraints and assessment of vitals) of the plaintiff who at which time was not released from restraints when he had obviously been composed since the onset of the incident.

18. On July 31, 2014, at times: 1:15am, 3:15am, 5:15am and 7:15am, defendant stedalink entered the segregation unit, where plaintiff remained strapped down to a bed in full stationary restraints, to supervise the R.O.M. process on the plaintiff but failed to release him from restraint when he observed plaintiff's mood calm and overall compliant.

19. Defendant MacDonald, on July 31, 2014 at times: 1:15am, 3:15am, 5:15am and 7:15am entered the plaintiff's cell on all times to do assessment on plaintiff's chains and check his vitals (blood-pressure, ect.) but failed to act by not instructing

8

officer to release him from restraints when Defendant McDonald continuously noticed the plaintiff was cool, calm and self-collective during this entire period.

20. Defendant Griffin, on 7-31-14 at approximately 8:50am, entered the plaintiff's cell (in the segregation unit) and engaged him in a convival conversation, asking him in a rather noticeably fond manner and tone if he (the plaintiff) was yet her teammate. "Until the end", the plaintiff replied. "Then why won't you just obey me, comply with the strip search, huh?", Defendant Griffin asked the plaintiff. Plaintiff then stated to Defendant Griffin: "you and your coworkers are just going to allow me to be tied down like this, to a damn bed when I'm not being a danger to anyone"? "Jason, behave me", Defendant Griffin almost inaudibly stated and continued to state: "how can I continue to consider you my teammate in any circumstance if you won't obey me"? "What? As some scarecrow you could just string-up or a test dummy that you could tie down like you doing now"? Defendant Griffin slowly ambled toward the plaintiff bed (upon where he had been tied) and imploringly stated, "Jason" before she eventually left plaintiff's quarters.

9

21. Defendant Colvin, at approximately 9:10am on July 31, 2014 approached the Plaintiff (while he was yet in full stationary restraints) and next down graded the plaintiff into "in-cell restraints" which consist of metal shackles, 4-foot long tether chain connecting from shackles to handcuffs with a metal box-like contraption applied over the handcuffs along with a waist chain. Defendant left the plaintiff in this chained bind, knowing he had not been a danger or combative with anyone.

22. Again Defendant Colvin returned to the plaintiff's cell on or around 2:30pm on July 31, 2014 and inquired of the plaintiff would he comply with a strip-search. The plaintiff declined at which point Defendant Colvin left the plaintiff chained up.

23. Defendant Scarchilli, on July 31, 2014 around 11:30am entered plaintiff's cell and inquired if he would comply with a strip-search. The plaintiff responded "no" and defendant retreated from plaintiff cell, leaving him in chains.

24. On July 31, 2014, at 5:05pm defendant Champion reported to the plaintiff's cell and asked him would he complete the strip-search. Plaintiff stated "no" and

10.

Defendant Champion left the plaintiff chained-up while yet noticing him continuously collective and composed.

25. At approximately 8:15pm on July 31, 2014, Defendant Champion, again, approached the plaintiff's cell to inquire if he would comply with the strip search at which time the plaintiff responded "no". Once more, noting the plaintiff peaceful conduct, Defendant Champion left plaintiff in chains.

26. While under Defendant Champion's watch on July 31, 2014 around 10:30pm Defendant B. Simmons conducted a restraint assessment of plaintiff's wrist and noticed plaintiff's wrists considerably swollen and thereafter failed to provide any sort of treatment for plaintiff's visibly swollen wrists. Defendant Simmons also failed to act to have the plaintiff released from the chains which was causing his injury.

27. Defendant Norfleet on date August 1, 2014 at approximately 1:00am came to the plaintiff's cell to do a restraint assessment and inquired of plaintiff if he would comply with the strip search. The plaintiff then refused at which point Defendant Norfleet left from the plaintiff's cell, continuing to leave him in chains, despite plaintiff's calm demeanor.

11.

28. Defendant Waldron, at times 10:00am and 2:25pm on August 1, 2014, approached the plaintiff cell to determine as to whether he would complete the strip-search from days previous and when he learned that the plaintiff would not, defendant left plaintiff in chains, yet noticing his injuries to his wrists and continuous calm and stoic demeanor.

29. Defendant Palmer, on August 2, 2014 at times 9:30am and 1:30pm, approached the plaintiff (who was yet chained up) to inquire as to whether he would cooperate with officers strip-searching him from days ago. The plaintiff declined. Defendant Palmer fully noticing the plaintiff's severe bearing failed to release the plaintiff out of chains and failed to have a medical professional treat his injuries on his wrists but in lieu assumed a medical professional role, checked the plaintiff's swollen wrists and left the plaintiff in chains.

30. Defendant Erfe, on dates August 1, 2014 and August 2, 2014 had been well aware of the plaintiff being in restraints and completely aware of plaintiff's non-disruptive conduct while in chains but gave no orders to his officers to release the plaintiff out of chains.

31. Defendant Shaw, on August 3, 2014, knowingly failed to administer any health care aid to the plaintiff's painful severely swollen wrists — even after he asked her — upon, finally, having the chains removed from him.

## Causes of Action

32. Defendants Champion, Studalink, Palmer, Waldron, Griffin, Scarchilli, Norfleet and Colvin action in using excessive and unnecessary physical force, by way of restraints, on the plaintiff without further need and after they noticed his bearing stoic and thereby no longer posing a threat amounted to a violation of the plaintiff's rights under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment.

33. Defendants Erfe, Shaw, Simmons, McDonald, Colvin, Norfleet, Scarchilli, Griffin, Waldron, Palmer, Studalink and Champion failed to act or intervene to prevent the misuse of force of restraints constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

34. The purposeful failure of defendants Champion, Palmer, Waldron and Norfleet to have correctional nursing staff to provide or administer medical treatment to plaintiff's visibly and known injuries (to his wrists) constituted deliberate indifference to the plaintiff's serious medical needs and thus violated plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment under the United States Constitution.

35. The actions or inactions defendant Shaw, Simmons and McDonald failure to act in their professional medical capacity to treat plaintiff's constituted deliberate indifference to the plaintiff's serious medical needs and thus violated plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment under the United States Constitution.

36. All defendants named in this complaint, in connection to the plaintiff, acted in direct violation of the Connecticut Constitution which prohibits unlawful segregation pursuant to Article One, Section Twenty, as well as the equal protection of law of this Article by defendants acting outside the scope of their administrative directives.

14.

## Exhaustion of Administrative Remedies

37. Plaintiff has exhausted all available administrative remedies for this claim.

## Previous Lawsuits Filed

38. Goode v. Blue, 3:10 CV 135 (MRK) dealt with the subject-matter of excessive use of force and has been settled.

Goode v. Bruno, 3:10-cv-01734 (SRU) involved a substantial religious rights violation and is yet on the active civil docket.

Goode v. Quiros, et al, 3:12-cv-01205 (JCH) involved excessive use of force and the deprivation of bodily liberty and is currently being litigated.

Goode v. Maldonado, et al, 3:15-cv-00561 (AVC) concerned various law violations by correctional employees and is yet being litigated.

15.

<u>Good v. Faucci, et al</u> 3:17-cv-004 (AVC) concerns the breach of Attorney-Client Confidentiality by Correctional employees and has recently been filed.

### Relief Requested

1. Issue a <u>permanent injunction</u> against remaining supervisory defendants named herein to immediately cause the misuse of restraints on prisoners and pre-trial detainees who non-combatively declines to complete a strip search and have employed other penological practices that <u>do not</u> involve the unnecessary and excessive use of bodily force.

2. Award compensatory damages against <u>all</u> herein named defendants for the physical and emotional injury sustained as a result of plaintiff's unnecessary chaining.

3. Award punitive damages against all herein named defendants

4. Award Attorneys Fees

16.

5. Issue a declaratory judgment stating that the actions of all herein named defendants violated the plaintiff's under the Eighth Amendment to the United States Constitution.

6. Grant such other relief as it may appear that plaintiff is entitled.

Jury Demand

Plaintiff wishes to have a trial by jury

Respectfully submitted

Jason Goode

Jason Goode #228240
Northern Correction Institution
287 Bilton Road
P.O. Box 665
Somers, Ct 06071

## Declaration Under Penalty of Perjury

Pursuant to 28 U.S.C. §1746, the undersigned declares under penalty of perjury that he is the plaintiff in this matter, that he has read the complaint, and that the information in the complaint is true and correct to the best of his knowledge and belief.

Executed at Somers, Connecticut on this 10th day of June, 2014

*/s/ Jason Goode*
Jason Goode

Jason Goode #228240

NCI
P.O. BOX 665
287 BILTON RD
SOMERS, CT 06071

X-RAY SCREENING
COMPLETED

To → Office of the Clerk
United States District Court
United States Courthouse
915 Lafayette Boulevard
Bridgeport, CT 06604