```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

JASON GOODE,                     :
   plaintiff,                    :
                                 :
     v.                          :    Case No. 3:17cv1188(AVC)
                                 :
ANGEL CHAMPION, ET AL.           :
   defendants                    :    July 31, 2017
```

## INITIAL REVIEW ORDER

On July 17, 2017, the plaintiff, Jason Goode, an inmate currently confined at Northern Correctional Institution in Somers, Connecticut, filed a complaint pursuant to 42 U.S.C. § 1983, against lieutenant Angel Champion, lieutenant Brian Stadalink, lieutenant Richard Waldron, lieutenant Brian Palmer, captain Amie Griffin, lieutenant Scarchilli, lieutenant Norfleet, lieutenant Herman Colvin, warden Scott Erfe, and nurses Mike McDonald, B. Simmons, and Beth Shaw in their official and individual capacities for monetary, injunctive, and declaratory relief.  All defendants are employees at Corrigan Correctional Institution in Uncasville, Connecticut ("Corrigan"), where Goode was housed at the time of the facts that give rise to his claims.  On July 21, 2017, this court granted Goode's motion to proceed in forma pauperis.  For the following reasons, his complaint will be dismissed in part.

## FACTS

As a result of an incident at another correctional

institution, lieutenant Champion ordered that Goode be upgraded to full stationary restraints after he refused to comply with a strip search.  Under full stationary restraints, officials secured Goode's wrists and ankles to a bed with leather straps.

On July 30, 2014, at 11:05 p.m., Champion reported to Goode's segregation unit to supervise the "range of motion" process, which consists of removing each of Goode's arms from the leather straps in order to assess his vitals. On four occasions in the early morning hours of July 31, lieutenant Stadalink and nurse McDonald entered the Goode's cell to conduct the "range of motion" process, but failed to release him from the leather straps despite the plaintiff's calm and compliant demeanor.

At approximately 8:50 a.m. on July 31, captain Griffin entered the Goode's cell and asked him "in a rather noticeably fond manner and tone if he . . . was yet her teammate."  Goode replied, "until the end."  Griffin then asked, "Then why don't you just obey me, comply with the strip search, huh?"  Goode told Griffin that she and her co-workers continued to keep him in full restraints even though he was not a danger to anyone.  Griffin then said to the Goode "[h]ow can I continue to consider you my teammate in any circumstance if you won't obey me?" Goode told Griffin that she could just string him up like a

2

"scarecrow" or "test dummy."  Id.   Griffin slowly approached Goode and then left his cell.

At 9:10 a.m., lieutenant Colvin entered Goode's cell, removed his full restraints, and placed him in "in-cell restraints," a less secure form of confinement consisting of handcuffs and metal shackles.  Colvin returned Goode's cell hours later and asked him if he would comply with the strip search.  Goode declined, and Colvin left his cell.

At various times on July 31 and August 1, lieutenants Scarchilli, Champion and Norfleet entered Goode's cell and asked him if he would comply with the strip search.  Goode declined, and the lieutenants left his cell despite the fact that he was calm and cooperative.

At approximately 10:30 p.m., on July 31, nurse Simmons conducted a restraint assessment of Goode's wrists and noticed that his wrists were considerably swollen.  Nurse Simmons failed to provide Goode with any sort of treatment for his swollen wrists or see that he be released from the restraints.

On several occasions on August 1, lieutenants Waldron and Palmer entered the Goode's cell and asked whether he would comply with the strip search.  Goode declined and the lieutenants left his cell despite noticing the injuries to his wrists from the restraints.  Neither defendant attempted to seek

3

medical treatment for Goode. Warden Erfe was made aware of the plaintiff's situation but failed to order his release from the restraints.

At some point, Goode called nurse Shaw, who failed to administer any medical aid to his swollen wrists.

Eventually, Goode was released from the in-cell restraints.

### **STANDARD**

Pursuant to 28 U.S.C. § 1915A, this court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am.,

723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## DISCUSSION

Goode claims that all twelve defendants violated his Eighth Amendment protection against cruel and unusual punishment by using, or failing to prevent the use of, excessive force by subjecting him to full stationary and in-cell restraints, despite his calm demeanor.  Secondly, he claims that the defendants, Champion, Palmer, Waldron, Norfleet, Shaw, Simmons, and McDonald, acted with deliberate indifference to his medical needs in violation of the Eighth Amendment by failing to administer treatment for the injuries to his wrists.  Finally, Goode claims that all twelve defendants violated Conn. Const. art. I, § 20 by subjecting him to "unlawful segregation" and denying him equal protection of the law.

## I. Claims for Monetary Damages Against Defendants in their Official Capacities

The Eleventh Amendment bars any claim for monetary damages against a state official in his or her official capacity.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Thus, all claims for monetary damages against the defendants in their official capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(a)(2).

5

## II. **Excessive Force**

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (quoting Hudson v. McMillian, 503 US. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Id. at 37 (quoting Hudson, 503 U.S. at 9); see also Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (recognizing that not every push or shove violates prisoner's constitutional rights).

To establish a claim of excessive force under the Eighth Amendment, the prisoner must satisfy a subjective and objective component. See Sims, 230 F.3d at 20-21. The subjective component requires a showing that officer's use of physical force was "malicious[] and sadistic[] rather than as part of a good faith effort to maintain or restore discipline." Wilkins, 559 U.S. at 40 (quoting Hudson, 503 U.S. at 9). The objective component . . . focuses on the harm done in light of contemporary standards of decency, but the amount of harm that must be shown depends on the nature of the claim. Sims, 230 F.3d at 21; Banks v. Cty. of Westchester, 168 F. Supp.3d 682, 688 (S.D.N.Y. 2016). Although some degree of injury ordinarily will be required; Banks, 168 F. Supp.3d at 688; the prisoner

6

does not have to show that he sustained a significant injury in order to prevail on an excessive force claim.  <u>Sims</u>, 230 F.3d at 22; <u>Wilkins</u>, 559 U.S. at 37.  A prisoner sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically . . . ."  <u>Sims</u>, 230 F.3d at 22.

In this case, Goode alleges that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by subjecting him to full stationary restraints and in-cell restraints for his refusal to comply with a strip search.  He alleges that his confinement in those restraints over the course of several days caused him to sustain injuries to his wrists.  These allegations are sufficient to satisfy the objective component of a plausible excessive force claim.  <u>See</u> <u>Davidson v. Flynn</u>, 32 F.3d 27, 30 (2d Cir. 1994) (holding that allegation that handcuffs were placed on plaintiff "too tight[ly]" sufficient for objective component of excessive force claim); <u>Alston v. Bellerose</u>, 12 Civ. 147 (CSH), 2015 WL 4487973, *11 (D. Conn. Jul. 23, 2015) (same).

With the exception of those defendants who continued to subject Goode to in-cell restraints despite noticing the injuries to his wrists, he has not, however, stated facts from

which it reasonably could be inferred that the defendants used such force maliciously or sadistically to cause harm.  Goode alleges that the defendants, Stadalink, McDonald, Griffin, Colvin, Scarchilli, and Norfleet, left him in full stationary or in-cell restraints because he refused to comply with a strip search.  It does not appear from the plaintiff's allegations that these defendants confined him to such restraints for any purpose other than to maintain discipline.  See Mason v. Rich, 10 Civ. 397 (JBA), 2011 WL 4345025, *3 (D. Conn. Sep. 15, 2011) (recognizing that a single punch to prisoner was not excessive where prisoner disobeyed orders and refused to stop fighting with other inmate); Ramos v. Hicks, 87 Civ. 2272 (LBS), 1988 WL 80176, *2 (S.D.N.Y. Jul. 25, 1988) (holding that a single punch to the mouth resulting in a cut lip was not excessive force where inmate ignored orders, became agitated and attempted to damage state property).  Thus, the plaintiff's excessive force claim against Stadalink, McDonald, Griffin, Colvin, Scarchilli, and Norfleet will be dismissed.

In addition, Goode cannot state a plausible excessive force claim against the defendants, Simmons and Shaw, both of whom are registered nurses who work at Corrigan.  The court cannot infer from the facts in the complaint that these two nurses had any involvement in the decision to keep Goode confined in full

stationary or in-cell restraints.  Therefore, the excessive force claim against Simmons and Shaw will be dismissed.

Goode does allege that the defendants, Champion, Waldron, Palmer, and Erfe, kept him confined to in-cell restraints despite knowing that the restraints were causing injuries to his wrists.  Although somewhat conclusory, the court will permit his excessive force claim to proceed against these four defendants at this time.

**III. Deliberate Indifference to Medical Needs**

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Harrison v. Barkley, 219 F.3d 132, 137-38 (2d Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  In order to state a deliberate indifference claim, the prisoner must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 105 (1976)).

There are both objective and subjective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, the alleged deprivation

9

must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death, degeneration, or extreme pain."  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  Subjectively, the defendants must have been actually aware of a substantial risk that the prisoner would suffer serious harm as a result of their conduct.  See Salahuddin v. Goord, 467 F.3d 263, 280–81 (2d Cir. 2006).

    Here, Goode alleges that the defendants, Champion, Palmer, Waldron, Norfleet, Shaw, Simmons, and McDonald, acted with deliberate indifference to his medical needs in violation of the Eighth Amendment by failing to procure or provide medical treatment for the injuries to his wrists caused by the restraints.  Although it is not entirely clear at this point in the proceedings whether the injuries to the Goode's wrists constituted a "sufficiently serious" deprivation to satisfy the objective component of the deliberate indifference standard, the court will permit his claim to proceed at this time.  However, the claim cannot proceed against the defendants, Norfleet or McDonald, because Goode has not alleged any facts suggesting that these two defendants even knew about the injuries to his wrists.  Therefore, his Eighth Amendment claim will only proceed

against the defendants, Champion, Palmer, Waldron, Shaw, and Simmons.

## IV. State Constitutional Claim

Goode claims that all twelve defendants violated Conn. Const. art. I, § 20, by subjecting him to unlawful segregation, denying him equal protection of the law, and acting outside the scope of the Department of Correction administrative directives. Article first, § 20 of the Connecticut Constitution provides that "[n]o person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."  The plaintiff has not alleged any facts to support a claim under this state constitutional provision.  Therefore, this claim will be dismissed.

## V. Declaratory Relief

As a remedy, Goode seeks "a declaratory judgment stating that the actions of all herein named defendants violated [his rights] under the Eighth Amendment to the United States Constitution."

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships

11

without awaiting a violation of that right or a disturbance of the relationship." Colabella v. American Inst. Of Certified Pub. Accountants, 10 Civ. 2291 (KAM) (ALC), 2011 4532132, *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. See In re Combustion Equip. Assoc., Inc., 838 F.3d 35, 37 (2d Cir. 1998).

Goode's request for declaratory relief concerns only past actions. In fact, he alleges that the correction officials did eventually remove his in-cell restraints. He has not identified any legal relationships or issues that require resolution by declaratory relief. See Ward v. Thomas, 207 F.3d 114, 119-20 (2d Cir. 2000) (holding that the Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, his claim for declaratory relief is dismissed.

### ORDERS

(1) Goode's claims for monetary damages against the defendants in their official capacities, his state constitutional claim, and his claim for declaratory relief are DISMISSED. Goode's claims against the defendants, Stadalink, McDonald, Griffin, Colvin, Scarchilli, and Norfleet, are DISMISSED. His Eighth Amendment excessive force claim will proceed against the defendants, Champion, Waldron, Palmer, and

Erfe, and his Eighth Amendment deliberate indifference to medical needs claim will proceed against the defendants, Champion, Waldron, Palmer, Shaw, and Simmons.

(2) The clerk shall direct the United States Marshal Service to effect service of the complaint on the defendants, Champion, Waldron, Palmer, Erfe, Shaw, and Simmons, in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3) The clerk shall verify the current work addresses for the defendants, Champion, Waldron, Palmer, Erfe, Shaw, and Simmons, with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each defendant at the confirmed address within **twenty-one (21) days** of this order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day** after mailing.  If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The defendants shall file their response to the

complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the federal rules.

(3)  Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order.  Discovery requests need not be filed with the court.

(4)  All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

**SO ORDERED** at Hartford, Connecticut this 10th day of August, 2017.

$$\underline{\hspace{2cm}/s/\hspace{4cm}}$$
Alfred V. Covello
United States District Judge